[No. 23575. Department One. March 21, 1932.]

JOHN A. CONNOLLY *et al., Appellants,* v. PAUL E. DERBY, *Respondent.*[1]

[1]Reported in 9 P. (2d) 93.

*John F. Dore* and *Herbert B. Butler,* for appellants.

*Reynolds, Ballinger, Hutson & Boldt,* for respondent.

MITCHELL, J.—This action was brought by a guest and her husband against her host to recover for personal injuries, and is to be determined by the rule of gross negligence proximately resulting in the injuries. The verdict was for the plaintiffs. The court granted defendant's motion for judgment notwithstanding the verdict, from which the plaintiffs have appealed.

The assignments of error, properly presented, relate to the question whether there was sufficient evidence to take the case to the jury on the question of alleged gross negligence of the respondent, which evidence and all reasonable inferences therefrom must be considered from the standpoint most favorable to the appellants, if the judgment should be sustained.

The accident occurred in Seattle, Washington, at the intersection of Mary avenue northwest and west Eighty-fifth street, at one-thirty o'clock in the morning, as Paul E. Derby, respondent, driving a coupe, was taking Mrs. Connolly home from a dance. The coupe collided with a truck. The night was dark and misty. The windshield of the coupe, as Mrs. Connolly testified, "was blurred, and he had a windshield swipe going in front of him all the time." The parties were going east on west Eighty-fifth street. Mary avenue northwest, thirty-two feet wide between the curbs, enters west Eighty-fifth street from the south. At the time of the accident, there was no light at the intersection other than what is spoken of as a common gooseneck light of about one-third the candle power of the ordinary intersection arc light, attached to a pole near the southwest corner of the intersection. The corners of the intersection were unobstructed, and the

coupe was going at the reasonable speed of twenty-five miles an hour.

No one who witnessed the accident testified other than the respondent and Mrs. Connolly. The driver of the truck, though stopping at the time of the collision, got away from the scene without giving his name. Respondent and Mrs. Connolly both were uncertain whether the truck ran in front of them from Mary avenue northwest, or was already proceeding in front of them, respondent being rather of the opinion it suddenly came into the intersection in front of them at that point. Neither of the parties saw any light of any kind on the truck. Both testified it was a large truck, but were unable to say whether it was a furniture van or other kind of large truck, nor were they sure of its color.

Mrs. Connolly, who testified that she first saw the truck just before they entered the intersection, further testified as follows:

"Q. Where did the collision take place, roughly, close to what street? A. Close to Mary street. Q. Mary street and 85th at the further side of the intersection? A. Yes, sir, in the further side of the intersection. Q. That would be on the eastern side? A. On the eastern side. Q. And you were coming from the west going east? A. Yes."

Still further, and at the conclusion of her testimony, upon having her attention called to a deposition she had given in the case, she testified as follows:

"Q. Mrs. Connolly, I will ask you if you did not testify upon the giving of the deposition as follows: 'Q. And as you approached this intersection did you see the object with which you later came in contact? A. I had a look at the truck just as I saw it ahead of us. Q. How far away was Mr. Derby's car from the truck when you saw the truck? A. I could not say, as I am a poor judge of distance, but I saw it and I thought he was swinging out for the truck. Q. Mrs.

Connolly, at what distance away, or can you estimate the distance? A. He had enough room to pass it. If I were driving I could have passed it. Q. What distance would you say, a car length? A. I don't know exactly what; I can't say. Q. Would you say a car length or two car lengths or a car and a half, or something of that kind? A. I did not exactly know what it was,—a car length perhaps. I just remember seeing the truck ahead of me and I thought he was swinging out for it, and that is all I can say. Q. And the next thing was the accident? A. I don't remember that, you know; I don't remember. I don't remember anything after that.' Is that your testimony? A. Yes, sir, Mr. Boldt."

The respondent testified:

"Q. Where in the intersection did the collision occur? A. That is very hard to state, just exactly where it was. Q. Approximately where to the best of your recollection? A. Well, I suppose, right in the middle. . . . Q. You said about in the middle? A. Yes, sir, about in the middle. Q. Did you see this object before you came into collision with it? A. I saw it momentarily. Q. Before the impact actually occurred? A. Yes."

Mrs. Connolly testified also that, the morning after the accident, respondent told her that he felt terribly about it, that it was his fault. But such attempt on his part at consolation does not alter the situation. The facts upon which the case must be determined were wholly independent of that amenity. They were without any controversy between the parties; and whether, altogether, they were sufficient to save respondent from the charge of ordinary negligence, which would imply fault on his part, need not be discussed. Gross negligence, the rule applicable in this case, must be found against the respondent, else the appellant has no remedy; and under that doctrine, as defined in *Craig v. McAtee,* 160 Wash. 337, 295 Pac.

146, and other authorities therein cited, it must be held, as a matter of law, that the evidence in this case was not sufficient to take the case to the jury, and that the motion of the respondent for judgment notwithstanding the verdict was properly granted.

Affirmed.

TOLMAN, C. J., PARKER, HERMAN, and BEELER, JJ., concur.